## CREDO MINING & SMELTING CO. v. HIGHLAND MIN. & MILL. CO.

(Circuit Court, D. Washington, E. D. August 4, 1899.)

1. MINING CLAIMS—SUFFICIENCY OF DESCRIPTION—PERMANENT MONUMENTS.
   Posts from five to seven inches in diameter, firmly planted in the ground at the corners and ends of a mining claim, and standing not less than five feet above ground, are "permanent monuments," within the meaning of Rev. St. § 2324, requiring all records of such claims to contain such a description of the claim by reference to some natural object or permanent

monument as will identify the claim, and a recorded notice, which, in addition to a reference to such posts, also gives the general direction and distance of the claim from a lake and a river, is a sufficient compliance with the statute.

2. SAME—CONFLICTING LOCATIONS—EVIDENCE OF BOUNDARIES.

Where there is a conflict of evidence as to which one of two posts is the one set by the locator of a mining claim to. mark one of the corners, one of which would exclude, and one include, the discovery on which the location was based, and the work done by the locators, and the official survey for a patent was based on the latter on information given by the locator who set the posts, the testimony in favor of that as the true corner which sustains the survey and the validity of the location will be preferred.

This was a suit in aid of a contest of an application for a patent to a mining claim by the owners of a conflicting location.

Henley, Kellam & Lindsley and J. R. McBride, for complainant.
Scott & Rosslow and S. R. Stern, for defendant.

HANFORD, District Judge. The complainant claims to be the owner and to be in possession of a quartz-mining claim, called the "Wee Fraction Lode and Mining Claim," situated in the Newport mining district, Stevens county, state of Washington, which mine was located on the 31st day of October, 1897. The notice of location of said mining claim, as recorded by the county auditor of Stevens county and the recorder of the Newport mining district, is as follows:

"Notice of Quartz Location.

"We, the undersigned, having complied with the local and federal laws, have this day located and do claim fifteen (1,500) hundred linear feet of this lode or ledge of mineral-bearing rock, with six (600) hundred feet in width. Commencing at a post at the west center end marked 'West Center,' thence 300 ft. southerly to a post marked 'Southwest Corner,' thence 1,500 ft. easterly to a post marked 'Southeast Corner,' thence 300 ft. northerly to a post marked 'East Center,' thence 300 ft. northerly to a post marked 'Northeast Corner,' thence 1,500 ft. westerly to a post marked 'Northwest Corner,' thence 300 ft. southerly to the place of beginning. Intending to hold and work the same. This to be known as the Wee Fraction; situated in Newport mining district, Stevens Co., state of Washington, and is bounded on the north by the Comstock and on the west by the Key mining claim. Located this, the 31st day of October, 1897.

"Locators:                                              Burt McClarty.
                                                       "Geo. Martin.
                                                       "James McDonald."

Said claim overlaps the Comstock quartz-mining claim, which was discovered and located on the 2d day of May, 1896, and includes the development work and improvements thereon, the recorded notice of which claim is as follows:

"Notice of Quartz Location.
"Come Stock.               Washington State, Chewelah Mining District.
"Notice is hereby given that the undersigned having complied with the requirements of chapter six of title thirty-two of the Revised Statutes of the United States, and the laws of the above state, and the local customs and regulations of said district, and do hereby locate fifteen hundred feet on the Come Stock quartz lode, situate in Stevens county, in the above state and mining district, and further described as follows: Commencing at a post marked 'South' at the easterly corner, from thence three hundred feet in a northerly direction to the center end post marked 'Southeasterly,' thence three hundred feet in a

northerly direction to a corner post marked 'Northeasterly,' thence fifteen hundred feet in a northwesterly direction to a corner post marked 'Northwesterly,' thence three hundred feet in a southerly direction to a center end post marked 'Northwesterly,' thence three hundred feet in a southerly direction to a corner post marked 'Southwesterly,' thence fifteen hundred feet to place of beginning, intending to claim fifteen hundred feet in length and six hundred feet in width for the purpose of mining the same. Claiming the surface rights, privileges, and minerals and other rights granted by existing laws and customs. This claim is further described as follows: About one mile southwesterly from the Marshall Lake and two and one-half miles northerly from Pend d O'Rielle river. Posts are placed at the corner and both ends of center lines. This notice is placed at discovery. Located this 2 day of May, A. D. 1896.

"Witnesses: ———.

                              "H. McCullough,        ⎫
                              "Thomas W. Norton,   ⎬ Locators."
                              "S. R. Savage,             ⎭

The defendant claims to be the owner of the Comstock mine, and, having made the necessary surveys, caused a notice to be published of its application for a patent, and thereupon the complainant filed its notice of contest, and commenced this suit for the purpose of having a judicial determination of the rights of the parties with respect to the mining ground claimed by each. It is conceded that the Comstock was located and claimed long prior to the first steps taken towards initiating the rights claimed by the complainant, and the disputed questions in the case are whether there was an actual discovery of any vein, or lode, or rock in place bearing any of the precious metals within the boundaries described in the location notice, and marked on the ground prior to the location of the Wee Fraction claim, and whether the notice of location of the Comstock, which is above set forth, fulfills the requirements of the laws with respect to the description of the exact situation and boundaries of the claim. The complainant asserts that the Comstock location is void, and the ground was subject to relocation on the 31st day of October, 1897, for the reason that up to that time the defendant, or its predecessors in interest, had failed to make a record of the Comstock location containing such a description of the claim by reference to natural objects or permanent monuments as required by section 2324, Rev. St. U. S., which provides, among other things:

"All records of mining claims hereafter made shall contain the name or names of the locators, the date of the location, and such a description of the claim or claims located by reference to some natural object or permanent monument as will identify the claim."

It is quite plain from the reading of the notice itself that the locators of the Comstock claim intended to meet fully every requirement of the law. The notice which they caused to be recorded describes the claim by reference to posts at each of the four corners, and at the centers of both end lines, and, for the purpose of indicating the approximate situation of the claim, the notice also refers to a lake and a river, giving approximately the distances and directions therefrom to the claim. There is testimony disputing the accuracy of the distances and directions mentioned, and I have no doubt that, if there were no other description of the claim in the recorded notice than the reference therein to the lake and river,

it would be impossible to identify the claim by such a reference; but, on the other hand, the evidence convinces me that an intelligent person, having no other guide than the description of the claim contained in the recorded notice, would be aided by the reference to the lake and river in finding the vicinity of the claim, and when there would be able to readily find the claim and identify it by the posts referred to in the notice. By this test the recorded notice appears to me to be sufficient. I find from the evidence that the posts by which the lines of the claim were marked are from five to seven inches in diameter, and were all firmly planted in the ground, and stood not less than five feet above ground, and I hold that they are permanent monuments, within the definition of the phrase "permanent monuments" in this statute. There is no evidence tending to prove that the locators of the Wee Fraction claim, or the complainant, were deceived or misled by any failure to describe the Comstock claim in the recorded notice of the location thereof with sufficient accuracy to identify the claim by reference to natural objects or permanent monuments. On the contrary, it must be presumed that at the time of locating the Wee Fraction claim the Comstock claim had become and was then a well-known natural object, with boundaries as defined in the location notice as recorded, because it does not appear that at that time the Comstock claim had any other or different boundaries, and it does appear that the locators of the Wee Fraction had knowledge of the existence of the Comstock claim and its boundary lines; for, in the location notice which they caused to be recorded, the Comstock claim is referred to as one of the boundaries of the Wee Fraction claim. In the opinion of the supreme court by Mr. Justice Field, in the case of Hammer v. Milling Co., 130 U. S. 299, 9 Sup. Ct. 548, it was held that another mining claim referred to in a location notice will be presumed to be a well-known natural object or permanent monument until the contrary appears.

From the testimony it appears that all of the location stakes of the Comstock claim were set by S. R. Savage, and there is no other witness to the fact of the setting of the stakes, or the exact original situation of any of them, except the stakes themselves as they were afterwards found. It was several months after the location of the claim that Savage for the first time attempted to show the stakes to his associates. They then found the three stakes at the westerly end of the claim, and the northeastern corner stake and the easterly end center stake, and Mr. Savage pointed towards the place where he claimed to have set the southeast corner; but none of the party at that time saw that corner stake, or made any attempt to find it, and there is no trustworthy evidence in the case that any stake marking the southeast corner of the claim, or which might reasonably be taken to be the southeast corner stake, was found or identified until a very short time prior to the location of the Wee Fraction claim. There is evidence tending to prove that about that time the locators of the Wee Fraction found a small red fir-tree stump situated about 230 feet in a southerly direction from the east end center stake, which stump was blazed and marked appropriately

for the southeast corner of the Comstock claim, and there is evidence tending to prove that Savage told different parties that said red fir stump was in fact the southeast corner stake of the Comstock claim. About the same time the defendant employed a surveyor named Harrison to survey the southern boundary line of the Comstock claim, and Mr. Savage was called upon to assist the surveyor by pointing out to him the location stakes; but he was unable then, or pretended to be unable, to find any southeast corner stake, and the surveyor located the line by reference to the southwest corner stake and a stake which he set to represent the southeast corner, by measuring the proper distance in a southerly direction from the location stake at the northeast corner and the easterly end center stake, and it was found that the line thus fixed as and for the southern boundary line was northward of the discovery and of all the development work of the Comstock claim; and, if that line or any line to the northward thereof is in fact the true southern boundary, then the location of the Comstock claim is absolutely void for the reason that there was no mineral discovery within the lines of the claim as located. There is also uncontradicted testimony by Mr. Hamilton, whose deposition was taken in behalf of the complainant, to the effect that at the time of this survey Savage told Hamilton that the defendant's works were south of the southerly line of the Comstock claim, and therefore on vacant ground, and requested Hamilton to make a new location for the benefit of himself and Savage, which Hamilton agreed to do, but was forestalled by the location of the Wee Fraction claim. Several months afterwards a hemlock stake corresponding in size and general appearance to the other stakes which were set by Savage as the location stakes of the Comstock claim was found lying on the ground near a hole in which it is supposed to have been set at a distance of $589^{13}/_{100}$ feet, and bearing south 28 deg. and 32 min. west from the easterly end center stake, and this was identified by Mr. Savage in the presence of a number of witnesses as being the southeast corner stake of the Comstock claim, and the place where it was found as the place where the same was originally set by him in locating the Comstock claim. Savage also pointed out this stake and the place where it was found to the United States deputy surveyor, who made the survey for patent of the Comstock claim, as being in fact the southeast corner of said claim as originally located by him. He also, in a letter to the president of the defendant company, represented that he had found the southeast corner stake, and, among the exhibits introduced as evidence in the case, are said letter and an affidavit made by Savage to the effect that said hemlock stake is the true southeast corner. In his testimony as a witness for the complainant, Savage admits that he made the statements and representations with reference to said hemlock stake here referred to, and states that at the time of making the same he fully believed that said hemlock stake was the southeast corner stake of the Comstock claim, but nevertheless contradicts all of said statements, and positively denies that the hemlock stake is the stake which he set as and for the southeast corner. The only reason which he gives

for changing his opinion being a statement which he testifies was made to him by Harvey McCullough, one of the locators of the Comstock claim and a stockholder of the defendant company, to the effect that he (McCullough) had placed the hemlock stake at the place where it was found. It does not appear that McCullough could have had any reason or motive for making such a declaration to Savage, and it is altogether improbable that he did make it, and in his testimony he gives a direct and positive contradiction to the testimony of Savage on this point. I am therefore bound to find on the question as to whether McCullough did make the statement that there is a clear preponderance of the evidence in favor of the defendant.

The location stakes of the Comstock claim were not set by Savage with accuracy as to distances, so as to inclose no more than the area permitted to be taken in a mining claim, and the deputy mineral surveyor in making the official survey for a patent had to draw in the lines so as to throw out the excess in the length of the claim and excess in width at the easterly end, which he did by cutting off the westerly end of the claim and a strip on the north side at the easterly end, and in establishing the corners he adopted the hemlock stake as being the true southeast corner of the claim as originally located, and as surveyed for a patent, and a true line from that corner towards the southwest corner stake as originally located measured approximately 1,500 feet to the corner which he established as and for the northwest corner of the claim fixes the southern boundary so as to include within the Comstock claim the original mineral discovery and the development work and improvements made by the defendant company, which proceeding on the part of the surveyor is entirely proper if the hemlock stake is in fact the true southeast corner of the claim as originally located by Savage. Therefore the important question in the case is whether the hemlock stake or the red fir stump, or either of them, has been proved to be the true southeast corner as originally located. The testimony bearing upon this question is conflicting and voluminous, and affords a good basis for presumptions in favor of both parties. I can place no reliance upon the testimony of witnesses who claim to have been for a considerable period of time in the habit of passing daily or frequently near to, and in plain view of, the place where the hemlock post was found, and who deny that said post was either set in the ground or upon the ground, at said place, until about the time of the location of the Wee Fraction claim, for the reason that they are contradicted by at least an equal number of other witnesses who swear that they saw the post standing at said place in the summer of 1897. The opinions and theories of expert witnesses, based upon the appearances and conditions of the different posts and the writing thereon, as to the probability of the hemlock post or the red fir stump being the true corner, are simply confusing, because they seem to make as much for one side as the other. All the evidence of a positive character which identifies the red fir stump as the southeast corner of the Comstock claim is counterbalanced by the evidence of witnesses who testify that said stump

was cut and marked by them as location stake of the "Copper King," a mining claim situated adjoining the Comstock on the east.

My decision in this case is in favor of the defendant, and the following are the considerations which I regard as controlling, and which have led me to the conclusion upon which the decision rests: In the first place, there is the positive and uncontradicted testimony of Savage that he did set a location corner post at the southeast corner of the Comstock claim, and from the fact that he undertook to perform that service for the benefit of himself and his associates a presumption fairly arises that he did do so, and that he set the corner in such a position as to form the boundaries of the claim so as to include therein the mineral discovery upon which the location was based. Second. When Savage pretended to be unable to find the southeast corner at the time of the survey made by Harrison, he appears to have had a dishonest purpose to defeat the defendant's claim for the purpose of acquiring a larger interest in the property than he at that time owned. Third. The action of Savage in pointing out the hemlock post to the United States mineral surveyor, for the purpose of influencing him in making an official survey, and his representations then made that said post was the true southeast corner of the claim as located by him, and his voluntary affidavit to the same effect, must be regarded as positive evidence, by the only witness to the fact, that said hemlock post is in fact the true southeast corner, and said evidence is of greater weight and value than the testimony given by Savage in this case, contradicting his previous representations, for the reason that his representations, if accepted as the truth, support equity and justice, whereas the testimony of Savage, contradicting himself, if taken to be true, must defeat an official survey based upon data which he furnished, and deprive the defendant of its investments in the purchase and development of the mine; the loss being a consequence of having trusted to his good faith in setting the posts. In one case the complainant must suffer a loss, the risk of which it voluntarily assumed. In the other case the defendant would be made the victim of a legal fraud. A decree will be entered declaring the defendant to have the superior right to the ground within the boundaries of the Comstock claim, as established by the official survey.